HOLMAN (AMERICAN BIBLE SOC. v.). See Case No. 291.

---

## Case No. 6,626.

### HOLMEAD v. CHESAPEAKE & O. CANAL CO.

[1 Hayw. & H. 77.] [1]

Circuit Court, District of Columbia. April 29, 1842.

#### EVIDENCE—ADMISSIBILITY OF—TAXES.

1. Conversations as to the ownership of property between the father of the plaintiff and a third person may be given by that person, and is proper evidence to go to the jury.

2. The testimony of the assessor of taxes as to whom property is assessed on the books may be given to prove the payment of the taxes by the party in whose name the property appears on the said books, even if the assessment was copied from the book of a former assessment.

[Action at law by William Holmead against the Chesapeake & Ohio Canal Company, for damages.]

This is a suit for damages brought by the plaintiff against said company for constructing and building a dam upon Rock creek causing the land of the plaintiff to be inundated. The declaration averred that the defendant did not, as the act of congress of March 3, 1825 [4 Stat. 115], authorized it to do, apply to a justice of the peace for a warrant, nor did any justice of the peace issue any warrant, nor was any jury summoned to meet on the said land as is by the said act provided, nor was any inquisition had at any time, to ascertain the damages sustained by the said plaintiff by reason of the erection of the said dam, and the plaintiff avers that by reason of the erection of the said dam, his said land and the inheritance therein was and is greatly diminished and injured in value, and he hath repeatedly asked and demanded of the defendant compensation therefor. Yet the said defendant has wholly neglected and refused to make him any compensation therefor. The defendant pleaded the general issue. The plaintiff gave evidence that previous to the death of the plaintiff's father, one Douglass had the locus in quo enclosed, and possessed the same as tenant to the plaintiff's father from 1822 to 1829, when he left the said premises. One Vincent King testified for the plaintiff that the stone house situated near the low grounds alleged to be inundated by back-

1 [Reported by John A. Hayward, Esq., and George C. Hazelton, Esq.]

water from a dam erected by the defendant, was occupied by free negroes previous to 1817; that on one occasion the witness saw the plaintiff's father go to and return from the stone house aforesaid, and when he returned to the public road where the witness was, he told the witness, being then standing in the road, that he had gone to said stone house for the purpose of demanding his rent. No other person was present when this statement was made.

The defendant, by his counsel, objected to said testimony of the declarations of the plaintiff's father as evidence in this cause, but the court overruled said objection and admitted the same to go in evidence as explanatory of the purpose for which he went upon the land. The plaintiff gave evidence that since the death of his father, and before this suit, he went fishing on the premises in dispute, and walked over the same. That a cousin of the plaintiff testified that he well knew the land in question; that it has for more than thirty years, to the knowledge of the witness, been claimed by the father of the plaintiff and by the plaintiff; that the plaintiff is only son and heir of his father, John Holmead; that he knew that the land was rented by Douglass of John Holmead in his lifetime, and Douglass paid him rent; that since the death of John Holmead, which was in the year 1831, he has repeatedly been on the land with the plaintiff, and knew he always spoke of it and claimed it as his own; that after Douglass left the land it was occupied by a man named Troyford; that the ground was enclosed both during the lifetime of John Holmead and after his death, and that it was enclosed when witness was on the land with plaintiff; that he never heard plaintiff when on the land claim it, until about six or seven months before the sale to Cunningham, and then the plaintiff was on the land with witness, and told witness that he was about to sell all his land lying on that side of the creek; that he never knew any other person to claim the said land. The said witness, on cross-examination, testified that plaintiff did not at the time of making such statement point out the extent of his claim, and did not point out the locus in quo as part of his land, and was not then standing on the low ground covered by the water. The defendant objected to the admissibility of the above evidence so offered to the jury.

The plaintiff proved by one Pairo, that about thirty years ago, he, Pairo, married the aunt of the plaintiff, and knew the land, and heard plaintiff's father claim it from that time until his death as his, but never knew the plaintiff's father to claim it while on the land, except once or twice when there was an enclosure of about four acres; but who put it up or who worked it witness did not know; at that time plaintiff's father, while standing in said enclosure, said he owned about five or six acres there, and

both witness and plaintiff's father went away together, leaving no person in the house or in the enclosure, and he never heard of any adverse title to the said property. The plaintiff also proved by one Beall, that from 1833 to the bringing of this suit, the plaintiff paid taxes upon the property in dispute. To the admittance of the said evidence the defendant objected. The court overruled the objections.

In the cross-examination of said Beall, the defendant, by its counsel, asked him how he knew that plaintiff had paid the taxes for the property in dispute, and he said he knew it was for said property because he was one of the assessors and had assessed the same; that said assessment was entered in the books of the corporation of Georgetown, and was copied from the description of a former assessment to plaintiff's father, but witness did not survey the land, and does not know that the description given of it in said assessment would include the land in dispute, although he was one of the assessors and went upon the land to view it, and assessed the whole land which Douglass possessed, as well as more land than he possessed, all of which was assessed to plaintiff. The defendant, by its counsel, moved to exclude the evidence of the payment of taxes upon the ground that the best evidence is not produced to show that the taxes were assessed for the property in dispute, and that the witness' knowledge is based upon the written assessment and the description therein given, but the court refused to exclude the said evidence. The jury found for the plaintiff, and assessed his damages at $570, with interest from April 28, 1842.

The defendant, by its counsel, moved the court for a new trial: Because the verdict of the jury was against the law and the evidence of the case. Because the damages found were excessive. Because the court erred in the law of the case in refusing the instructions asked by the defendant, and in admitting illegal testimony.

James Hoban, for plaintiff.
Brent & Brent, for defendant.

THE COURT (THRUSTON, Circuit Judge, absent) overruled the motion for a new trial.